UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-cr-123 (KMM/LIB) |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT AND RECOMMENDATION** |
| Eric Scott Sherman, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, and upon the Government's Motion for Discovery, [Docket No. 15], and Defendant Eric Scott Sherman's ("Defendant") Motion to Suppress Evidence. [Docket No. 29]. The Court held a Motions hearing on November 1, 2022, regarding the parties' pretrial motions.

For the reasons discussed herein, the Government's Motion for Discovery, [Docket No. 15], is **GRANTED**. Further, it is recommended that Defendant's Motion to Suppress Evidence, [Docket No. 29], be **DENIED**.

## I. Government's Motion for Discovery. [Docket No. 15].

The Government seeks discovery pursuant to Rules 16(b), 12.1, 12.2, 12.3, and 26.2 of the Federal Rules of Criminal Procedure, as well as, Rules 702, 703, and 705 of the Federal Rules of Evidence. (See Gov't's Mot. for Discovery, [Docket No. 15]).

### A. Inspection and Copying Pursuant to Rule 16(b)

#### 1. Documents and Tangible Objects

The Government requests that the Court order Defendant to permit inspection and copying of all books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

Defendant did not object to the request. The motion is granted, and Defendant shall disclose any such responsive materials no later than fourteen (14) days before trial.

### 2. Reports of Examinations and Tests

The Government further requests all results and reports of physical or mental examinations and of scientific tests or experiments made in connection with the above captioned matter, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial.

Defendant did not object to the request. The motion is granted, and Defendant shall disclose any such responsive materials no later than fourteen (14) days before trial.

### 3. Expert Testimony

The Government also seeks a written summary of expert testimony Defendant intends to use under Rule 702, 703, and 705 of the Federal Rules of Evidence as evidence at trial. The Government asserts that the summary must describe the opinions of the expert witnesses, the basis and reasons therefore, and the witnesses' qualifications.

Defendant did not object to the request.  The motion is granted.  Defendant shall disclose any such responsive materials for experts he intends to call in his defense case-in-chief at trial no later than twenty-eight (28) days before trial.  Defendant shall disclose any such responsive materials related to rebuttal expert reports no later than fourteen (14) days before trial.

**B.    Notice of Alibi Defense**

Pursuant to Federal Rule of Criminal Procedure 12.1, the Government seeks an Order from the Court requiring Defendant, if he intends to claim alibi as a defense, to state the specific place or places at which Defendant claims to have been at the time of the alleged offenses in the above captioned matter and the names and addresses of the witnesses upon whom Defendant intends to rely to establish such alibi.

Defendant did not object to this request. The motion is granted. Defendant shall give notice of same pursuant to Rule 12.1 as soon as practicable and in no event later than twenty-one (21) days before trial.

**C.    Notice of Insanity/Mental Illness Defense**

In addition, pursuant to Federal Rule of Criminal Procedure 12.2, the Government requests the Court to order Defendant, if he intends to rely upon the defense of insanity or introduce expert testimony relating to a mental disease or defect or any other mental condition of Defendant relevant to the issue of guilt, to provide the Government notice of such defense.

Defendant did not object to this request. The motion is granted, and Defendant shall give notice of same pursuant to Rule 12.2 as soon as practicable and in no event later than twenty-one (21) days before trial.

**D.    Notice of Public Authority**

Pursuant to Federal Rule of Criminal Procedure 12.3, the Government seeks an order from the Court requiring Defendant, if he intends to rely upon the defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the offense, to notify the Government and the Court no later than the date of the first hearing on pretrial motions.

Defendant did not object to this request.  The motion is granted, and Defendant shall give notice of same pursuant to Federal Rule of Criminal Procedure 12.3 as soon as practicable and in no event later than twenty-one (21) days before trial.

### E.  Witness Statements

The Government seeks all statements within Defendant's possession or control of any witness that Defendant intends to call in connection with a suppression hearing, detention hearing, trial, or sentencing.

Defendant did not object to this request.  The motion is granted.  To the extent Defendant has statements in his possession or control of any witness that he intends to call to testify in connection with a suppression hearing, detention hearing, trial, or sentencing, Defendant shall disclose such statements to the Government no later than three (3) calendar days before such witness is called to testify.

## II.  Defendant's Motion to Suppress Evidence. [Docket No. 29].

Defendant moves the Court to suppress a cellular phone and all of the information on it seized from him on December 1, 2020, because the seizure and search of his cellular phone was conducted without a search warrant, without probable cause, and without an exception to the warrant requirement.  (Def.'s Mot., [Docket No. 29]; Def.'s Mem., [Docket No. 43]).  The Government contends that the cellular phone was seized pursuant to a valid search warrant, and in the alternative, under exigent circumstances, the independent source doctrine, and the inevitable discovery doctrine, and its content was searched pursuant to a valid subsequent search warrant. (Gov't's Mem., [Docket No. 44]).

## A.  Statement of Facts[1]

The record presently before the Court indicates that, on March 3, 2020, the National Center for Missing and Exploited Children ("NCMEC") received a cyber tip from MediaLab/Kik ("Kik"), which advised that, between February 23, 2020, and March 3, 2020, a resident in the Duluth, Minnesota area had uploaded twenty (20) separate images/videos of child pornography via private message or messaging group.  (Affidavit, Gov't's Ex. 1, at p. 17).[2]  The tip also provided specific times that child pornography was uploaded from IP address 75.128.245.100.  (Id.).  On April 30, 2020, Homeland Security Investigations ("HSI") developed a lead from its Cyber Crimes Center's ("C3") Child Exploitation Investigations Unit ("CEIU") connecting child exploitation content to username "CHRIS23757," which included twenty (20) videos depicting child exploitation.  (Id.). Username "CHRIS23757," along with a second username "JETHRO420," were both associated with the email address "jethro420@gmail.com" and both shared the IP Address previously reported by Kik as having uploaded child pornography.  (Id.).

These tips led to an investigation being opened into the usernames "CHRIS23757" and "JETHRO420," as well as, IP address 75.128.245.100.  (Affidavit, Gov't's Ex. 1, at pp. 18-19). On May 6, 2020, Special Agent Michael Sisto, the case agent assigned to the investigation, reviewed all twenty videos uploaded from IP address 75.128.245.100, fifteen of which were uploaded on February 24, 2020, and five of which were uploaded on February 26, 2020.  (Id. at p. 18).   SA Sisto also determined that IP address 75.128.245.100 (the "IP Address") resolved to

---

[1] The facts contained in this section are derived from the Government and Defendant's exhibits presented in this case, as well as, the testimony of Special Agent Richard Berger.

[2] Government's Exhibit 1 is the warrant application, supporting affidavit, and warrant to search Defendant's home. At the Motions hearing, the Government, without objection, offered the warrant application, supporting affidavit, and the warrant into evidence as Government's Exhibit 1. (Tr. 5).  Further, throughout this Report and Recommendation, the Court refers to the transcript of the November 1, 2022, Motions Hearing by the abbreviation "Tr." (Transcript, [Docket No. 38]).

Duluth, Minnesota with Charter Communications as the Internet Service Provider ("ISP").  (Id. at p. 19).  Consequentially, SA Sisto requested subscriber information from Charter Communications for the IP Address.  (Id.).  In response, SA Sisto learned that the IP Address belonged to Defendant with a Duluth, Minnesota service address of "[xxxx] W 1st Street."  (Id. at pp. 19-20).

SA Sisto then performed a record check of Defendant and confirmed that Defendant's address was "[xxxx] W 1st Street" and that a "gray 2015 Subaru Forester" (the "Subaru Forester") was registered to his name.  (Affidavit, Gov't's Ex. 1, at p. 20).  SA Sisto learned that Defendant was on probation until June 8, 2026, for a conviction of second degree Criminal Sexual Conduct, which prohibited him from owning or operating any device that allows for Internet access.  (Id. at p. 20).  SA Sisto also confirmed with Defendant's probation officer that Defendant lived in the upper level of "[xxxx] W 1st Street" and was currently driving the 2015 Subaru Forester.  (Id. at pp. 20-21).  SA Sisto also conducted surveillance of the home and learned that Defendant typically left around 5:00 a.m. to go to work at a location near the Duluth Airport.  (Affidavit, Gov't's Ex. 3, at p. 4).[3]

On November 19, 2020, SA Sisto applied for two identical Federal Court warrants to search Defendant's home and Subaru Forester.  (Application, Gov't's Ex. 1; Application, Govt's' Ex. 2).  SA Sisto also submitted two identical affidavits in support of his applications.  (Affidavit, Gov't's Ex. 1; Affidavit, Govt's' Ex. 2).  In these identical affidavits, SA Sisto provided all the details of the investigation as already described above, except for, he also attested that, based on his training and experience, he knew that "collectors of child exploitation images often store them on cell phones and small storage devices that can be concealed on their person and transported on their

---

[3] Government's Exhibit 3 is the warrant application, supporting affidavit, and warrant to search Defendant's cellular phone. At the Motions hearing, the Government, without objection, offered the warrant application, supporting affidavit, and the warrant into evidence as Government's Exhibit 3.  (Tr. 5).

person, including to and from their personal residence [and] in their personal vehicle." (Affidavit, Gov't's Ex. 1, at p. 20; Affidavit, Gov't's Ex. 2, at p. 20).[4] SA Sisto further attested that, based on, among other things, child exploitation material being access by the IP Address registered to Defendant, there was probable cause to believe that evidence of this crime [would] be contained" in the home and in the Subaru Forester.[5] (Affidavit, Gov't's Ex. 1, at pp. 21-23; Affidavit, Govt's' Ex. 2, at pp. 21-23).

On November 19, 2020, the Honorable Hildy Bowbeer issued two Federal warrants authorizing the search of Defendant's home (the "Home Search Warrant") and Subaru Forester (the "Vehicle Search Warrant") (collectively, the "Home and Vehicle Search Warrants"). (See Home Search Warrant, Gov't's Ex. 1; Vehicle Search Warrant, Gov't's Ex. 2). Specifically, Judge Bowbeer determined that, for both warrants, "the affidavits(s), or any recorded testimony, establish[ed] probable cause to search and seize the person or property." (Home Search Warrant, Gov't's Ex. 1; Vehicle Search Warrant, Gov't's Ex. 2). Further, Judge Bowbeer directed law enforcement to execute the Home and Vehicle Search Warrants by December 3, 2020, between 6:00 a.m. and 10:00 p.m. (Home Search Warrant, Gov't's Ex. 1; Vehicle Search Warrant, Gov't's Ex. 2). Lastly, "Attachment B" to the Home and Vehicle Search Warrants described the types of items to be searched for and seized, as among other things, "[a]ny and all items capable of storing digital files and images, including, but not limited to . . . cellular telephones, iPads, flash drives, and multimedia cards." (Home Search Warrant, Gov't's Ex. 1, at p. 28; Vehicle Search Warrant, Gov't's Ex. 2, at p. 28).

---

[4] Government's Exhibit 2 is the warrant application, supporting affidavit, and warrant to search Defendant's vehicle. At the Motions hearing, the Government, without objection, offered the warrant application, supporting affidavit, and the warrant into evidence as Government's Exhibit 2. (Tr. 5).

[5] Defendant's home was listed as: "[xxxx] W 1st Street, Apt 2, Duluth, Minnesota," and Defendant's vehicle was list as: "a gray 2015 Subaru Forester bearing Minnesota license plate EDY-798 and Vehicle Identification Number (VIN) JF2SJGWC3FH429046." (Affidavit, Gov't's Ex. 1, at pp. 21-23; Affidavit, Govt's' Ex. 2, at pp. 21-23).

SA Sisto intended to execute the Home and Vehicle Search Warrants on December 1, 2020. The day before, on November 30, 2020, Special Agent Richard Berger ("SA Berger") met with SA Sisto (along with other officers) to, among other things, review objectives of the search warrant operation, the items subject to seizure under the warrants, and Defendant's criminal history. (Tr. 9-10, 25). SA Berger learned that the execution of the Home and Vehicle Search Warrants involved a child exploitation case; that Kik was the application used by Defendant as part of the tip that led law enforcement to Defendant; that Defendant had accessed Kik through his cellular phone; and that Defendant's cellular phone was one of the items to be seized. (Tr. 10-12, 19). SA Berger was also assigned to surveil the home and assist with entry the following day. (Tr. 12, 14).

On December 1, 2020, in anticipation of executing the Home and Vehicle Search Warrants, SA Berger arrived at approximately 5:00 a.m. in his own vehicle and parked "a block over around the corner" from Defendant's home to conduct surveillance. (Tr. 13; Affidavit, Gov't's Ex. 3, at p. 4). However, at approximately 5:10 a.m., fellow law enforcement officers radioed that Defendant was leaving the home in the Subaru Forester presumably for his place of employment, Clearwater Composites. (Tr. 15; Affidavit, Gov't's Ex. 3, at p. 4). SA Berger, along with three other vehicles being driven by SA Sisto, Special Agent Henkenmeyer ("SA Henkenmeyer"), and Special Agent Katie Booth ("SA Booth"), then began following Defendant. (Tr. 15; Affidavit, Gov't's Ex. 3, at p. 4). Because there were concerns that Defendant may stop at another location before arriving at his place of employment, SA Henkenmeyer and SA Berger chose to drive ahead to be at Clearwater Composites to meet Defendant, while SA Booth and SA Sisto continued following Defendant. (Tr. 16).[6]

---

[6] At the November 1, 2022, Motions Hearing, SA Berger testified that the decision to encounter Defendant in the parking lot of his employment was due to, among other things, the information learned about the investigation, officer and public safety, and in an effort to avoid disruptions at Defendant's employer and to prevent Defendant from obtaining "potential weapons" from his place of employment. (Tr. 25-26, 38-39).

At approximately 5:30 a.m., Defendant arrived at the parking lot of his employer and parked his Subaru Forester. (Tr. 16; Affidavit, Gov't Ex. 3, at p. 4). SA Berger, along with SA Henkenmeyer, approached Defendant while he was seated in his vehicle, "got out with [their] guns faced at [Defendant], . . . drew down on him, and instructed [Defendant] to get out of the vehicle." (Tr. 16, 19). Defendant was then instructed to walk to the rear of the vehicle and place his hands on the Subaru Forester. (Tr. 16, 17, 19; Affidavit, Gov't Ex. 3, at p. 4). SA Berger pat searched Defendant "for weapons . . . or any hard item that's palpable on [Defendant's] body." (Tr. 17-18; Affidavit, Gov't Ex. 3, at p. 4). SA Berger recovered from Defendant a razor blade, earbuds, a wallet, and a Motorola Moto G7 cellular phone (the "Cellular Phone"). (Tr. 18; Affidavit, Gov't Ex. 3, at p. 4). SA Berger then handed the items to SA Henkenmeyer, and the items were placed on the front seat of the Subaru Forester.[7] (Tr. 18-20).

Defendant was not arrested nor placed in handcuffs. (Tr. 26).

SA Sisto and SA Booth then approached the scene and asked Defendant if he would consent to an interview in SA Booth's vehicle; Defendant agreed. (Tr. 18; Affidavit, Gov't Ex. 3, at p. 5). Defendant then sat in one of the law enforcement vehicles with SA Booth and SA Sisto. (Tr. 18; Affidavit, Gov't Ex. 3, at p. 4). Because it was cold and they did not intend to physically search the Subaru Forester until after 6:00 a.m., SA Berger sat in his own vehicle while Defendant was interviewed by SA Sisto and SA Booth. (Tr. 20).

At some point, SA Berger received a text message that Defendant, who was still sitting in SA Sisto's vehicle, wanted his vape; SA Berger secured it from the Subaru Forester and brought it to Defendant. (Tr. 21, 23). At approximately 6:00 a.m., SA Berger received a second text

---

[7] SA Berger testified that Defendant's cellular phone could not have been left with him prior to 6:00 a.m. but needed to be "detain[ed] as soon as possible" to, among other things, prevent the device from being wiped either remotely or by Defendant himself. (Tr. 19, 25). If not, law enforcement "could potentially lose evidence for the case." (Tr. 19).

message that Defendant wanted the Cellular Phone to contact his girlfriend, at which point SA Berger retrieved it and brought it over to SA Sisto or SA Booth.  (Tr. 22, 23).  However, the Cellular Phone's contents were not reviewed that day.  (Tr. 22).  SA Berger then asked Defendant to identify the key to his home to avoid breaking down a door to gain entry when executing the Home Search Warrant.  (Tr. 23-24).

At approximately 6:05 a.m., Defendant was still sitting in SA Sisto's vehicle speaking with the officers, and the Subaru Forester had not yet been searched, when SA Berger left the scene to execute the Home Search Warrant.  (Tr. 24).  It was SA Sisto who ultimately searched the Subaru Forester at approximately 6:15 a.m.  (Tr. 26).  The Cellular Phone was powered down and placed in the evidence room at the HSI office in St. Paul, Minnesota.  (Affidavit, Gov't Ex. 3, at p. 6).

On December 4, 2020, SA Sisto drafted an application for a Federal Court search warrant authorizing law enforcement to download and search the contents of the Cellular Phone, which was seized from Defendant on December 1, 2020.  (Application, Gov't Ex. 3).  In his affidavit, SA Sisto materially provided the information described above, and further attested to certain statements made by Defendant during his consensual interview on December 1, 2020.  (Affidavit, Gov't Ex. 3, at p. 5).  SA Sisto further attested that a subscriber information request submitted to Google confirmed that email address "jethro7052@gmail.com" was created by Defendant with a recovery phone number that belonged to Defendant.  (Affidavit, Gov't Ex. 3, at p. 5).  Lastly, SA Sisto attested that he sought this Federal warrant "out of an abundance of caution to ensure that HSI has legal authority to conduct an examination" of the Cellular Phone content because, while the phone was obtained pursuant to Vehicle Search Warrant, it was initially located outside the Vehicle on Defendant's person, immediately after he had exited his vehicle.  (Affidavit, Gov't Ex. 3, at p. 6).

On December 4, 2020, the Honorable Tony N. Leung determined that probable cause existed to support the issuance of the Federal search warrant for the content of the Cellular Phone (the "Cellular Phone Search Warrant"). (See Cellular Phone Search Warrant, Gov't's Ex. 3). Thereafter, SA Berger executed the search warrant and downloaded the content of the Cellular Phone. (Tr. 27).

### B.  Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

### C.  Analysis

Defendant does not challenge the existence of probable cause for the Vehicle Search Warrant. (Def.'s Mem., [Docket No. 43], at p. 7). Instead, Defendant challenges the seizure and search of his person prior to law enforcement executing the Vehicle Search Warrant, and challenges the execution of the warrant itself, arguing that it was wrongfully executed outside of the time frame authorized on the face of the Vehicle Search Warrant. (Id. at pp.4-11).

Turning first to Defendant's contention that law enforcement wrongfully executed the Vehicle Warrant, Defendant appears to argue that any evidence flowing from the Vehicle Search Warrant must be suppressed as fruit of the poisonous tree because his vehicle was effectively stopped, and he was briefly detained before 6:00 a.m. in violation of Federal Rule of Criminal

Procedure 41.  (Def.'s Mem., [Docket No. 43], at pp. 10-11).  The Court finds this argument unpersuasive.

The time of day that a search is executed bears on its reasonableness because "intrusion into an occupied **home** in the middle of the night is plainly a greater invasion of privacy than entry during the day."  United States v. Smith, 340 F. Supp. 1023, 1029 (D. Conn. 1972) (emphasis added).[8]  This concern about nighttime entry originates from Federal Rule of Criminal Procedure 41(e)(2)(A)(ii), which requires that search warrants command that agents "execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." "Daytime" is defined as "the hours between 6:00 a.m. and 10:00 p.m., according to local time."  Fed. R. Crim. P. 41(a)(2)(B).  When a search is governed by Rule 41 of the Federal Rules of Criminal Procedure, as it presumably does here, the exclusionary rule applies only if Defendant is prejudiced in the sense that the search might not have occurred or would not have been so abrasive had proper procedures been followed, or if reckless disregard of proper procedure is evident.  United States v. Harris, 324 F.3d 602, 606 (8th Cir. 2003); United States v. Berry, 113 F.3d 121, 123 (8th Cir. 1997); United States v. Bieri, 21 F.3d 811, 816 (8th Cir.1994); United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977); United States v. Burke, 517 F.2d 377, 386–87 (2d Cir. 1975).

Here, there can be no dispute that, while the actual search of the Vehicle did not occur until after 6:00 a.m. (the time authorized by the Vehicle Search Warrant), the execution of said warrant arguably began when SA Berger and SA Henkenmeyer acted to secure the Vehicle in the parking lot of Defendant's employer at approximately 5:30 a.m.  However, while law enforcement may

---

[8] The rationale of United States v. Smith, supra, and Fed. R. Civ. P. 41(e)(2)(A)(ii) could be no less applicable to execution of a search warrant on an automobile than to a home; especially where the expectation of privacy in an automobile is reasonably somewhat less than that in a person's home.

have prematurely executed the Vehicle Search Warrant by no more than thirty minutes, the Court finds that suppression of any evidence that ultimately flowed from it (including the seizure of Defendant's Cellular Phone and later the information on it) is not warranted.

First, Defendant has failed to provide evidence that the executing officers acted with an intentional and deliberate disregard of Fed. R. Crim. P. 41. The record before the Court demonstrates that, although the executing officers did not originally intend to execute the Vehicle Search Warrant until after 6:00 a.m., Defendant's unexpected early departure from his home at 5:00 a.m. in the Subaru Forester (the subject vehicle) caused the executing officers to follow Defendant. SA Berger testified at the November 1, 2022, Motions Hearing that the decision to then execute the Vehicle Search Warrant in the parking lot of Defendant's employment was due to, among other things, an effort to preserve evidence related to the child pornography investigation and to ensure officer and public safety. The Court finds that the officers' actions were reasonable under these circumstances.

Second, Defendant has failed to demonstrate that the search would have been any less abrasive had it occurred a mere thirty minutes later—at or after 6:00 a.m. At the time law enforcement officers approached Defendant to execute the Vehicle Search Warrant, Defendant was not asleep in his house in the middle of the night, but was sitting in his parked vehicle, awake, alert, and preparing to begin his work shift. The concerns related to nighttime entry meant to be addressed by Fed. R. Crim. P. 41 are simply not applicable here. See U.S. v. Schoenheit, 856 F.2d 74, 77 (8th Cir. 1988) ("'[I]t is difficult to imagine that a search in broad daylight would have been any less abrasive than was this search.'").

In sum, Defendant has failed to demonstrate that the search of his 2015 Subaru Forester—thirty minutes before the time authorized on the Vehicle Search Warrant—was unreasonable. Nor

has Defendant demonstrated that he was prejudiced or that there was reckless disregard of Fed. R. Crim. P. 41.  See, e.g., Harris, 324 F.3d at 606 (citing Berry, 113 F.3d at 123)).

Therefore, the Court recommends **DENYING** Defendant's Motion to Suppress Evidence, [Docket No. 29], to the extent that Defendant challenges the 5:30 a.m. execution of the Vehicle Search Warrant for failure to comply with Fed. R. Crim. P. 41.

Defendant next argues that he was unlawfully seized because, although his vehicle was the subject of a search warrant, law enforcement lacked, among other things, a reasonable, articulable basis to believe that Defendant was committing a crime, and therefore, they did not have a basis to briefly detain him during their initial encounter.  (Def.'s Mem., [Docket No. 43], at pp. 6-7).  The Court disagrees.

In Michigan v. Summers, 452 U.S. 692 (1981), the United States Supreme Court "defined an important category of cases in which detention is allowed without probable cause to arrest for a crime.  It permitted officers executing a search warrant 'to detain the occupants of the premises while a proper search is conducted.'"  Bailey v. United States, 133 S. Ct. 1031, 1037 (2013) (quoting Summers, 452 U.S., at 705).  "Such detentions are appropriate, [the Supreme Court] explained, because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial."  Muehler v. Mena, 544 U.S. 93, 98 (2005) (citing Summers, 452 U.S. at 705).

The record before the Court indicates that law enforcement did briefly detain Defendant when, while sitting in the parked Subaru Forester, SA Berger and SA Henkenmeyer approached him with their guns drawn, directed him to walk to the rear of the vehicle, and place his hands on it.  However, because the Subaru Forester was subject to the Vehicle Search Warrant, which Defendant does not dispute, the executing officers were clearly allowed to briefly detain

Defendant, the vehicle's occupant, as they secured the Subaru Forester for purposes of executing said search warrant. The law has long recognized the right of officers to briefly detain occupants for officer safety and to preserve evidence during the execution of a search warrant. <u>Mena</u>, 544 U.S. at 99-101 (2005); <u>Summers</u>, 452 U.S. at 705 (1981).

Accordingly, because the officers executing the warrant to search the Vehicle had the authority to briefly detain Defendant, the Court recommends **DENYING** Defendant's Motion to Suppress Evidence, [Docket No. 29], to the extent that Defendant challenges the limited seizure of his person that occurred when the officers executed the Vehicle Search Warrant by securing the Subaru Forester of 5:30 a.m. on December 1, 2020.

Defendant next argues that, although his Subaru Forester was subjected to the Vehicle Search Warrant, the Court must suppress his Cellular Phone (and any information in it) that was seized from his person when he was pat searched while standing outside of the Subaru Forester. In support, Defendant contends that the officers: 1) lacked any evidence that he was presently armed or dangerous; 2) lacked consent to search him; 3) cannot justify the search as incident to a lawful arrest; and 4) lacked exigent circumstances to search his person. (Def.'s Mem., [Docket No. 43], at pp. 7-10). Here too the Court is not persuaded.

It is established that officers are allowed to take reasonable actions to ensure their own safety while they execute a warrant to search the premises named in a search warrant. <u>Los Angeles Cty., California v. Rettele</u>, 550 U.S. 609, 614 (2007). Further, once officers have lawfully stopped a suspect, the officer may conduct a pat-down search of the suspect to ensure officer safety if the officer has reason to believe that the suspect may be armed and dangerous. <u>United States v. Cowan</u>, 674 F.3d 947, 951 (8th Cir. 2012) (citing <u>United States v. Horton</u>, 611 F.3d 936, 940-41 (8th Cir. 2010)). Moreover, a person lawfully detained in connection with execution of a search

warrant may be patted down for safety.  See United States v. Kouayara, 189 F. Supp. 3d 835, 844 (D. Minn. 2016).

As the Court previously detailed, the officers had a search warrant for the Subaru Forester at the time Defendant was found sitting inside the vehicle—a situation which is analogous to instances where an individual is found inside of a residence to be searched subject to a warrant— such that Defendant could be briefly detained.  The record then demonstrates that the only search of Defendant's person was a mere pat down which occurred almost immediately after the officers approached Defendant and directed him to step out, walk to the rear, and place his hands on the Subaru Forester.  SA Berger testified that, at the time he approached Defendant, he was aware that Defendant was being investigated for child exploitation; that Defendant had a prior assault charge and a criminal sexual conviction; that Defendant was on probation at the time, which prohibited him from possessing any device that could connect to the Internet; and that there was evidence that Defendant was accessing Kik through his Cellular Phone.  Given the totality of the circumstances, this information was more than sufficient to satisfy the Terry standard for a pat down.  See Terry v. Ohio, 392 U.S. 1 (1968).  In other words, SA Berger was allowed to pat-down Defendant for officer protection.  Once he felt the bulges in Defendant's pocket, SA Berger was then permitted to remove what was inside.  See United States v. Hanlon, 401 F.3d 926, 930 (8th Cir. 2005) (upholding a Terry frisk and subsequent retrieval when an officer felt a small, hard object in the defendant's pocket and testified he could not rule out the possibility it was a weapon); Terry, 392 U.S. at 23 ("[I]t would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.").  The pat-down search ultimately revealed a razor blade (which could have been used as a weapon), earbuds, and a wallet, as well as, the Cellular Phone, which had minutes before been inside the vehicle to be searched and was among the items to be searched

for and seized in "Attachment B" of the Vehicle Search Warrant. The Court finds that the pat down of Defendant under these circumstances was constitutionally permitted.

Accordingly, to the extent that Defendant's Motion to Suppress Evidence, [Docket No. 29], seeks to suppress the evidence obtained as a result of the pat-down search of Defendant's person, the Court recommends **DENYING** the motion.[9]

### III. Conclusion

For the reasons discussed above, based on the present record before the Court, **IT IS HEREBY ORDERED THAT**:

1. The Government's Motion for Discovery, [Docket No. 15], is **GRANTED**, as set forth above.

Further, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion to Suppress Evidence, [Docket No. 29], be **DENIED**.

Dated: January 11, 2023                                      s/Leo I. Brisbois
                                                            Hon. Leo I. Brisbois
                                                            U.S. Magistrate Judge

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

---

[9] Lastly, absent evidence that officers examined or attempted to search the contents of the Cellular Phone, the Court finds that any information obtained from the Cellular Phone was lawfully obtained pursuant to the subsequent Cellular Phone Search Warrant, which was applied for on December 4, 2020, and which authorized law enforcement officers to search the Cellular Phone's contents. (Gov't's Ex. 3). Defendant does not challenge the Cellular Phone Search Warrant nor is there evidence that the officers searched the contents of the Cellular Phone when it was first found on Defendant's person on December 1, 2020. Accordingly, any information found on the Cellular Phone pursuant to the Cellular Phone Search Warrant was lawfully seized.

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.