UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

v.

Eric Scott Sherman,

                Defendant.

Case No. 22-CR-123 (KMM/LIB)

ORDER

      This matter is before the Court on Defendant Eric Sherman's Objections to the Report and Recommendation (R&R) of United States Magistrate Judge Leo I. Brisbois, dated January 11, 2023. [Objections, Dkt. No. 49; R&R, Dkt. No. 48.] Judge Brisbois recommends that Mr. Sherman's Motion to Suppress be denied.

      After an R&R is issued, a party may "file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *United States v. Miller*, Crim. No. 20-232(19) (JRT/BRT), 2022 WL 3644894, at *2 (D. Minn. Aug. 24, 2022) (quoting *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008)). The Court reviews de novo those portions of the R&R to which specific objections are made, and it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3). For the reasons set forth below, the Court **OVERRULES** Mr. Sherman's Objections, **ACCEPTS**

1

the R&R to the extent that it is consistent with the analysis below, and **DENIES** Mr. Sherman's Motion to Suppress.

## I. BACKGROUND[1]

### A. Factual History

In the spring of 2020, law enforcement received a tip that a Duluth, Minnesota resident had uploaded child pornography via private message or a messaging group on Kik, a social media platform. [R&R 5; Mem. Mot. to Suppress 2, Dkt. No. 43.] The illicit content was connected to the Kik username CHRIS23757, which was associated with the email account jethro7052@gmail.com. [R&R 5.] The investigation linked the uploaded content to an IP address associated with Mr. Sherman. [R&R 5–6.] The U.S. Homeland Security Investigations case agent for the investigation, Special Agent Michael Sisto ("SA Sisto"), learned that Mr. Sherman had been convicted of sexual assault on a minor in 2012, that he was still on supervised release from that offense, and that as a condition of his release, Mr. Sherman was prohibited from owning or operating a device with internet access. [*Id.* at 6.] SA Sisto also learned that Mr. Sherman had a fifth-degree assault conviction from 2009. [Mem. Mot. to Suppress 3.]

In November 2020, SA Sisto applied for two warrants to search Mr. Sherman's home and vehicle (hereinafter the "Home Search Warrant" and the "Vehicle Search Warrant"). [R&R at 6.] Magistrate Judge Hildy Bowbeer found that there was probable cause and

---

[1] Mr. Sherman does not object to the R&R's factual findings, so the Court only briefly recounts the relevant facts here. *See Objections* at 1 ("The relevant background information for these Objections is contained within the R&R itself.").

2

authorized the search of Mr. Sherman's home and his 2015 Subaru Forester. [*See* Vehicle Search Warrant, Dkt. No. 34-1; Home Search Warrant, Dkt. No. 34-2.] Both warrants included an Attachment B describing the items to be searched and seized, which included "[a]ny and all items capable of storing digital files and images, including, but not limited to . . . cellular telephones." [*E.g.*, Vehicle Search Warrant at 31.] The warrants ordered law enforcement to execute the warrants "in the daytime 6:00 a.m. to 10 p.m." by December 3, 2020. [*E.g., id.* at 1.] But from surveilling his house, law enforcement knew that Mr. Sherman typically left around 5:00 a.m. to go to work and that his job started at 6:00 a.m. [Phone Search Warrant at 7, Dkt. No. 34-3.]

Officers decided to execute the warrants on December 1st and met the night before to prepare. Officers were told at this briefing that Mr. Sherman was on probation for a child sexual abuse case and that he had a previous assault charge. [Mem. Mot. to Suppress at 2.] The next morning, officers surveilled his home and saw Mr. Sherman leave around 5:10 a.m. [R&R at 8.] The officers followed him and arrived at his employer's parking lot around 5:30. [*Id.*] The officers approached with guns drawn, ordered him out of his car, and pat him down, searching "for weapons, just for [officer] safety and his own." [*Id.* at 9; Tr. of Nov. 1, 2022 Hr'g at 17–18, Dkt. No. 38.] Special Agent Berger ("SA Berger") conducted the pat-down frisk, and he testified at the motion hearing that it was a quick pat down "basically just to find weapons or any hard item that's palpable on his body." [*Id.* at 18.] Officers recovered a razor blade, earbuds, a wallet, and a Motorola Moto G7 cell phone from this search. [*Id.*] They moved the items to the front seat of Mr. Sherman's car and put the phone on airplane mode. [*Id.* at 19–20, 23.] SA Berger testified that it was important to detain the phone as soon as

3

possible to preclude the loss or destruction of any evidence, such as from a remote wipe of the device. [*Id.* at 19.] He explained that he has lost evidence in previous child exploitation investigations from failing to detain cell phones. [*Id.*]

Mr. Sherman consented to an interview in a law enforcement vehicle, and officers spoke with him until 6:00 a.m. [*Id.*] When asked about the jethro7052@gmail.com email account associated with the Kik user who uploaded the content, Mr. Sherman stated that it "may be his account, but he was unsure." [Phone Search Warrant 8.] Once it was 6:00 a.m., the officers searched his car pursuant to the Vehicle Search Warrant and his home pursuant to the Home Search Warrant. [Tr. of Nov. 1, 2022 Hr'g. at 10.] Mr. Sherman's cell phone was powered down and subsequently place in a law enforcement evidence room. [*Id.*] Officers did not search it at that time. [Gov't Resp. to Obj. 1, Dkt. No. 50.]

That same day, investigators submitted a summons to Google for information about the subscriber for the email address jethro7052@gmail.com. [Phone Search Warrant 8.] Google provided information the following day establishing that the jethro7052@gmail account was created by Eric S. and had a recovery phone number that the officers knew to belong to Mr. Sherman. [*Id.*] Google's records showed that the email account had been used as recently as November 9, 2020. [*Id.*]

Two days later, SA Sisto obtained a third warrant "out of an abundance of caution" that authorized searching the contents of the cell phone. [*Id.*] In the warrant application, SA Sisto stated that the phone "was obtained pursuant to [the] earlier warrant" yet acknowledged that the phone "was located on SHERMAN's person but seized outside the SUBJECT VEHICLE." [Phone Search Warrant at 9.] SA Sisto included the information he received

from Google to support this subsequent application, along with the information included in the previous two warrant applications. [*See generally* Phone Search Warrant.] Pursuant to that warrant, law enforcement downloaded the contents of the cell phone, which provided evidence supporting the government's charges against Mr. Sherman of receipt and possession of child pornography.

### B. Procedural History

Mr. Sherman moved to suppress the cell phone and information obtained from it, arguing that the search of his person and the seizure of his phone were conducted without a warrant, without probable cause, and without an exception to the warrant requirement. [Mot. to Suppress, Dkt. No. 29; Mem. Supporting Mot. to Suppress, Dkt. No. 43.] The government responded that the phone was seized pursuant to a valid warrant, and in the alternative, that its seizure was justified by the presence of exigent circumstances, the independent source doctrine, and the inevitable discovery doctrine. [Gov't Opp'n., Dkt. No. 44.]

In his R&R, Judge Brisbois recommended that this Court deny the motion to suppress. Judge Brisbois first rejected any argument that execution of the search warrant required suppression. Mr. Sherman had contended that the search of his person was unlawful because it was executed before 6:00 a.m. in violation of the face of the warrant and Federal Rule of Criminal Procedure 41. Judge Brisbois concluded that Mr. Sherman did not establish that the officers acted with intentional and deliberate disregard of Rule 41, and that Mr. Sherman also failed to demonstrate that the search would have been less abrasive had it occurred at 6:00 a.m. [R&R 11–14.]

5

Second, Judge Brisbois upheld the officers' seizure of Mr. Sherman, finding that the brief seizure of his person before searching his car was permitted pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981), in which the Supreme Court held that officers executing a search warrant for a home could detain its occupants while the search was conducted. [R&R 14–15.]

Third, Judge Brisbois determined that the search of Mr. Sherman's person, though not included in the warrant, was a pat-down frisk for officer safety permitted by *United States v. Cowan*, 674 F.3d 947, 951 (8th Cir. 2012) and *Terry v. Ohio*, 392 U.S. 1 (1968). [R&R 15–17.] He found that the totality of the circumstances satisfied the *Terry* standard for a pat down and that the officers could remove the items they felt in his pockets to rule out the possibility that they were weapons. [R&R 16.] Accordingly, Judge Brisbois recommended denying the motion to the extent Mr. Sherman sought to suppress the evidence obtained from the pat-down search. In a footnote, Judge Brisbois concluded that any information obtained from the phone was lawfully obtained pursuant to the Phone Search Warrant. [R&R 17 n.9.]

Mr. Sherman filed objections to the R&R. [*See* Objections, Dkt. No. 49.] He first contends that the R&R departed from the government's proffered rationales and suggested that doing so is impermissible. As to the seizure of his person, Mr. Sherman argues that the *Summers* doctrine has not been extended to the vehicular context and that unlike *Summers*, the seizure of his person was not contemporaneous with the execution of the search warrant and corresponding search of his car. As to the search of his person, he emphasizes that none of the search warrants authorized the search of his person, and if the officers wanted to search him, they should have included that in their applications. Mr. Sherman asserts that *Terry* does not justify the protective frisk because the officers did not have reasonable suspicion that he

6

was armed and dangerous in the morning on his way to work and the search was not confined to a search for weapons. Finally, Mr. Sherman contends that the seizure of his phone was not justified pursuant to any of the government's earlier arguments, including exigent circumstances, inevitable-discovery, independent-source, and the good-faith exception to the exclusionary rule.

The government responds by reiterating the reasoning of the R&R, namely that the seizure of Mr. Sherman was justified by the *Summers* doctrine, and the pat down search of Mr. Sherman was justified by concerns of officer safety. [*See* Gov't Resp. to Obj., Dkt. No. 50.] The government also repeats its prior arguments, which the R&R did not discuss, that even if the search and seizure of Mr. Sherman violated the Fourth Amendment, the phone should not be suppressed because it was seized pursuant to exigent circumstances, it inevitably would have been discovered, it was lawfully searched pursuant to a valid warrant consistent with the independent source doctrine, and the officers acted in good faith.

## II.   DISCUSSION

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

**A. Exceptions to the Warrant Requirement**

The government has articulated myriad paths for this Court to follow in finding that the warrantless search of Mr. Sherman and seizure of his cell phone were legal. As described above, Judge Brisbois adopted certain of those rationales in recommending denial of the motion to suppress. The Court agrees in part with the analysis of the R&R, and finds other bases for denying suppression to be even more relevant.

*Pat Down for Weapons*

This Court has skepticism about the applicability of one doctrine proffered by the government and relied upon by the R&R. That is, the Court is doubtful that the search of Mr. Sherman was a lawful pat-down search for weapons. Officers may perform a protective frisk for weapons when they have a reasonable suspicion based on articulable facts that an individual is "armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573 (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1967)). But here, the only basis for the officers' suspicion that Mr. Sherman might be armed and dangerous was the knowledge of his prior convictions. Neither conviction involved a weapon, and both were quite old, dating back to 2012 and earlier. Although knowledge of a defendant's prior convictions can *support* a finding of reasonable suspicion, the Eighth Circuit has never upheld a pat-down search for weapons when that is the *only* fact supporting the officer's reasonable suspicion. *See, e.g.*, *United States v. Preston*, 685 F.3d 685, 689–90 (8th Cir. 2012); *United States v. Garcia*, 441 F.3d 596, 599 (2006); *see also United States v. Fable*, No. 3:18-CR-00003 (JCH), 2018 WL 3727346, at *6 (D. Conn. July 24, 2018) (collecting cases from various circuits holding that "while a criminal record may contribute to an officer's reasonable suspicion, it generally may not serve as the sole grounds for a frisk").

In this district, Judge Schiltz has expressly found that a lengthy criminal record, by itself, was not enough to justify a *Terry* stop and frisk. *United States v. Allen Class*, No. 15-CR-0348 (PJS/TNL), 2016 WL 3512140, at *2 (D. Minn. June 22, 2016), *aff'd sub nom. United States v. Class*, 883 F.3d 734 (8th Cir. 2018). If it were otherwise, having a criminal record would subject someone to a "lifetime" of *Terry* stops and pat-down searches. *Id.* And here, although there was ample probable cause that Mr. Sherman was engaging in criminal conduct, that conduct did not support an inference that he might be armed.

As further support for the search, the government argues that the officers knew Mr. Sherman was prohibited from possessing an internet-connected device as a condition of his probation and that they had evidence that he was accessing Kik through his cell phone. [R&R 16; Gov't Resp. to Obj. 8.] But this does not suggest that Mr. Sherman was currently *armed and dangerous*, only that evidence of the underlying crime would likely be found on him. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) ("The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.") The mere fact that a person might possess evidence or contraband does not support a frisk for weapons, and a search for evidentiary items other than weapons must be supported by a warrant or an exception to that requirement.

In considering the totality of the circumstances, the Court notes that many of the additional common justifications for a protective frisk are absent from this case. The search did not occur in the middle of the night, the officers were not outnumbered, Mr. Sherman did not exhibit signs of nervousness or resistance, and the investigation was not for a crime traditionally associated with the presence of firearms, such as a drug transaction. *See Bustos-*

9

*Torres*, 396 F.3d 935, 943 (8th Cir. 2005.)  To the contrary, the search took place in the morning before Mr. Sherman began his workday, in the parking lot of his employer, where he was outnumbered and ordered out of his car by officers with guns drawn, one of whom testified that Mr. Sherman cooperated throughout the interaction and was never handcuffed.  [Tr. of Nov. 1, 2022 Hr'g at 35–36.]

### Exigent Circumstances

Notwithstanding its skepticism about the frisk for weapons, the Court is less hesitant about the applicability in this case of other exceptions to the warrant requirement.  For instance, the validity of the right to conduct a warrantless search to prevent the destruction of evidence when exigent circumstances are present is well-settled.  *Lange v. California*, 141 S. Ct. 2011, 2017 (2021).  The Eighth Circuit has repeatedly found the risk that evidence of child-pornography offenses would be removed or destroyed from electronic devices presented exigent circumstances justifying the immediate seizure of those devices.  *See, e.g., United States v. May*, 993 F.3d 607, 616 (8th Cir. 2021); *United States v. Clutter*, 674 F.3d 980, 983, 985 (8th Cir. 2012); *United States v. Stephen*, 984 F.3d 625, 631 (8th Cir.), *reh'g denied* (Feb. 5, 2021), *cert. denied*, 142 S. Ct. 270 (2021).

To be sure, "the fact that evidence is stored on an electronic device does not itself constitute exigent circumstances."  *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023).  But the totality of circumstances in this case suggests a heightened risk of evidence destruction. The officers had warrants to search Mr. Sherman's vehicle and home, and those warrants specifically authorized them to seize a cell phone.  [*See, e.g.*, Attach. B to Vehicle Search Warrant.]  Law enforcement had evidence that Mr. Sherman uploaded the illicit content

through his cell phone and were aware that child pornography offenders often store images on cell phones that are kept on their person. [*See* Tr. of Nov. 1, 2022 Hr'g at 12, 19; Vehicle Search Warrant at 23.] And officers were aware that Mr. Sherman was prohibited by the conditions of his probation from possessing a smart phone, making the mere possession of the phone in this case an offense. The officers ordered Mr. Sherman out of his car at 5:30 a.m.—at which point he knew that they had warrants to search his car and home—and the officers detained him for 30 minutes until they could lawfully search his vehicle at 6 a.m. If they had not searched him and seized the phone at this time, the risk is high that he may have tried to reset or wipe his phone for incriminating evidence.

### *Securing the Scene and People at the Scene*

In addition to exigent circumstances, the Court is persuaded that the search of Mr. Sherman's person and seizure of his phone were justified pursuant to law enforcement's ability to secure the scene—and certain people at the scene—when executing a search warrant. The Supreme Court has determined that officers may "take reasonable action" when executing a search warrant "to secure the premises and to ensure their own safety and the efficacy of the search." *L.A. County. v. Rettele*, 550 U.S. 609, 614 (2007). And this Court is cognizant of Eighth Circuit authority permitting the search of persons who are present at the place to be searched when the search warrant is executed, as long as the officers have "particularized suspicion" connecting those persons to the illegal activity. *See United States v. Simmermaker*, 998 F.3d 1008 (8th Cir. 2021) (upholding search of person asleep in the home to be searched because officers had "particularized suspicion" that she was "connected to the illicit activity that provided the basis for the warrant"); *see also United States v. Cowan*, 675 F.3d 947, 954 (8th Cir. 2012) (holding

11

pat-down search of person in apartment that was the subject of a search warrant was lawful because the officers had probable cause to believe he was engaged in an illegal enterprise with the apartment's other occupants). Here, Mr. Sherman was not a mere visitor to the premises to be searched, or a passenger in someone else's car. *C.f. Ybarra v. Illinois*, 444 U.S. 85 (1979). Rather, he was the owner of the vehicle and home to be searched, and the expressly identified target of the investigation giving rise to the warrants. This lends the officers more than particularized suspicion that he was connected to the illegal activity. The Court concludes that either exigent circumstances or the above-described jurisprudence about the ability to seize and search people during the execution of a search warrant render lawful the warrantless search of Mr. Sherman's person.

### B. Exceptions to the Exclusionary Rule

Ultimately, however, whether doctrines justifying the warrantless search and seizure apply to the facts of this case matters little. Although the Court finds that the officers did not violate the Fourth Amendment by searching Mr. Sherman's person and seizing his phone, even if they had, the evidence obtained from the phone should not be suppressed because it inevitably would have been discovered by the officers.

The exclusionary rule reaches not just "primary evidence obtained as a direct result of an illegal search or seizure" but also derivative evidence that is "fruit of the poisonous tree." *United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). The exclusionary rule does not apply, however, when "the connection between the constitutional violation" and the evidence is "so attenuated as to dissipate the taint" of the violation. *Id.* (quotation omitted).

The government has suggested that both the inevitable discovery and independent source doctrines preclude suppression of the phone in this case. Admittedly, the jurisprudence distinguishing the two doctrines is less than pellucid. The independent-source doctrine applies if the evidence would have been acquired by lawful means "and in fact *was acquired*," whereas the inevitable-discovery doctrine applies where the evidence was not acquired by lawful means but nevertheless *would have been* acquired. *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020) (emphasis added). In essence, independent-source analysis considers what *did* happen while inevitable discovery takes a hypothetical look at what *would have* happened. Nevertheless, the distinction "is not sharp" and "where exactly one draws the line between the two doctrines is unimportant." *Id.*

Inevitable discovery fits better here.[2] The Court is certain that law enforcement would have soon discovered Mr. Sherman's phone even if they had not frisked him and found it that morning. The investigating agents received information from Google connecting the Kik username at issue to an email account and phone number associated with Mr. Sherman. This information would have led officers to apply for a warrant to search Mr. Sherman's person in

---

[2] The subsequent Phone Search Warrant cannot alone act as an independent source for discovery of the phone. Officers must show (1) the police still would have applied for that warrant even if they had not acquired the evidence from the unlawful search, and (2) the subsequent warrant would be supported by probable cause without the information gained from the unlawful search. *See Swope*, 542 F.3d at 614. Here, even though officers knew Mr. Sherman had a phone, they did not know any information about it, such as the phone make or identifying features. Put simply, officers would not have applied for a search warrant to search a "Black Motorola Moto G7 with a 'Don't Tread on Me' phone case" if they had not seized that particular phone from frisking Mr. Sherman. [*See* Phone Search Warrant 13.] Officers very likely would have applied for a similar warrant authorizing them to search Mr. Sherman's person and seize *a* cell phone. But that is a hypothetical warrant—proper for consideration under the inevitable discovery doctrine—not the actual, subsequent warrant this Court must consider in its independent-source analysis.

13

order to locate a cell phone with that phone number, even if they had not found the cell phone earlier through the pat-down search.

For the inevitable-discovery doctrine to apply, the government must establish through "a preponderance of the evidence" that it would have inevitably discovered the evidence at issue through lawful means. *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). The Eighth Circuit has used two tests for this doctrine, one which places a lesser burden on the government, and one which requires it to show that it was "actively pursuing" an alternative line of investigation at the time of the police misconduct. *Baez*, 983 F.3d at 1038–39 (describing its "inconsistent" approach and declining to resolve which test controls). Even under the more rigorous standard, this Court is convinced that law enforcement inevitably would have discovered Mr. Sherman's phone.

The officers knew about the jethro7052@gmail account and its connection to the Kik user who uploaded the illicit content in April 2020, well before seizing and searching Mr. Sherman. [*See* Phone Search Warrant 8.] As part of their investigation to prove that Mr. Sherman, and not someone else, was the Kik user, they certainly would have tracked down subscriber information for the email account associated with the Kik account. They also knew at the briefing the night before executing the search warrants that Mr. Sherman was accessing Kik from a cell phone and thus had an internet-connected phone in violation of his probation conditions. [*See* Tr. of Nov. 1, 2022 Hr'g at 12, 19.] In other words, officers knew Mr. Sherman had a phone and knew about the Google email address connected with the unlawful content. They needed something to connect the two. Investigators submitted a summons to Google for information regarding the account holder of the jethro7052@gmail email address

14

on the same day officers executed the search warrants, likely after Mr. Sherman answered in the consensual interview that he was not sure if the email account belonged to him. [*See* Phone Search Warrant 8.] Even though the summons to Google was submitted after the cell phone was discovered through the frisk, this Court is certain that investigators still would have requested information from Google to confirm whether the jethro7052@gmail email address was associated with Mr. Sherman, regardless of whether they had obtained his phone.

Furthermore, this Court is certain that the officers inevitably would have sought a warrant to search Mr. Sherman's person and seize a cell phone after receiving the information from Google if the lawful search of his car and home did not turn up the phone they knew existed. The Supreme Court has emphasized a "flexible, common-sense" approach to the Fourth Amendment, *see Texas v. Brown*, 460 U.S. 730, 735 (1983), and this Court need not suspend its common sense in concluding that the officers in this case inevitably would have discovered Mr. Sherman's cell phone. The phone was central to the crimes they were investigating, they were aware Mr. Sherman was not allowed to have an internet-connected phone, and they had information from Kik and Google that he did possess such a device. Inevitably, they would have discovered that phone, whether or not they frisked him.

**CONCLUSION**

There was an easy step the officers could have taken to ensure they didn't run afoul of the Fourth Amendment in this case. They could have included a request to search Mr. Sherman in their warrant application, and in the future they will likely do so. *See United States v. Ward*, 682 F.2d 876, 881 (10th Cir. 1982) ("[T]he Fourth Amendment violation found here may have been readily avoided had the search warrant been drafted to include a search of

Ward's person."). Officers had evidence Mr. Sherman had a cell phone in violation of his probation and was using it to upload unlawful content, and they knew from training and experience that child pornography offenders "often store" images on cell phones that can be "concealed on their person and transported on their person." [Vehicle Search Warrant 20.] They would have had probable cause to include a search of Mr. Sherman's person in the search warrant application. They did not.

The problem for Mr. Sherman is that this Court's task is not to determine what the officers ideally *should* have done but rather whether what the officers ultimately *did do* was unreasonable so as to violate the Fourth Amendment and warrant suppression of the fruits of such a violation. But the Court cannot find on this record that Mr. Sherman's cell phone should be suppressed: not only do at least two exceptions to the warrant requirement apply, but it inevitably would have been discovered by law enforcement even if they had not frisked him and found the phone. Accordingly, Mr. Sherman's Motion to Suppress is **DENIED**.

### III.   ORDER

Accordingly, **IT IS HEREBY ORDERED**:

1. The Report and Recommendation [Dkt. No. 48] is **ACCEPTED** in part.
2. Defendant's Objections [Dkt. No. 49] are **OVERRULED**.
3. Defendant's Motion to Suppress [Dkt. No. 29] is **DENIED**.

Date: April 10, 2023                              *s/ Katherine M. Menendez*
                                                  Katherine M. Menendez
                                                  United States District Judge